FILED
2015 Jun-03  AM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| BLUEWAVE HEALTHCARE ) <br> CONSULTANTS, INC., ) <br> ) <br> PLAINTIFF, ) <br> VS ) <br> ) <br> HEALTH DIAGNOSTIC ) <br> LABORATORY, INC., ) <br> ) <br> DEFENDANT. ) | CASE NO: 5:15-CV-00884-MHH |

## AMENDED COMPLAINT

BlueWave Healthcare Consultants, Inc., for Complaint against Health Diagnostic Laboratory, Inc. states as follows:

1. BlueWave Healthcare Consultants, Inc. ("BlueWave"), is an Alabama corporation with its principal place of business being located in the state of Alabama.

2. Health Diagnostic Laboratory, Inc. ("HDL") is a Virginia corporation with its principal place of business being located in the Commonwealth of Virginia. It has and presently does business, directly or through agents, servants,

employees or contractors, in Alabama and within the Northeastern Division of the Northern District of Alabama.

3. The amount in controversy exceeds $75,000.00 exclusive of interest, fees and costs.

4. This Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332.

5. BlueWave and HDL entered into a Sales Agreement, a copy of which is attached hereto and incorporated herein by reference, marked as Exhibit "A". Although it was stated to be effective as of January 4, 2010, the parties actually executed that agreement a few months after that date, i.e. on or about April 3, 2010.

6. Under the Sales Agreement, BlueWave was to promote testing procedures performed by HDL. In return, HDL was to compensate BlueWave and the two shareholders of Bluewave, Cal Dent ("Dent") and Brad Johnson ("Johnson") for services rendered by them.

7. Part of the compensation to be paid by HDL was in the form of a percentage commission based on the revenue collected by HDL from sales made in Bluewave's designated territory.

8. An additional part of the compensation to be paid by HDL was in the form of the issuance of stock in HDL to Dent and Johnson, each of whom were to

receive 29.4 shares of the outstanding common stock of HDL. In exchange, Dent and Johnson agreed to execute a Shareholders Agreement which was incorporated into, attached to and made a part of the Sales Agreement. A copy of the Shareholders Agreement is attached hereto as Exhibit B.

9. The Shareholders Agreement contained a noncompetition and nonsolicitation provision applicable to the shareholders of HDL. The Sales Agreement and the Shareholders Agreement were executed at substantially the same time as part of one agreement. Together, the Sales Agreement and the Shareholders Agreement constitute one contract (the "Contract").

10. HDL has now claimed that the Contract contains a provision that poses a risk of violating federal or state laws.

11. On information and belief, the Contract was drafted or reviewed by the law firm of LeClairRyan on behalf of HDL. Any illegality in the contract should have been apparent to that firm at the time that the Contract was prepared.

12. BlueWave, Johnson and Dent actually performed services for HDL.

13. HDL actually issued stock to Dent and Johnson and paid a portion of the monetary compensation that was due to BlueWave under the Contract.

14. The Sales Agreement provides, in part, that "the provisions of this Agreement are severable, and if any one provision is finally determined by a court of

competent jurisdiction to be void, unenforceable, or contrary to law or public policy, the remainder of this Agreement will remain valid and enforceable. If any of the restrictions contained in any paragraphs of this Agreement are found to be unenforceable in whole or in part, Contractor [BlueWave] and Company [HDL] agree that the restriction or portion therefor should be enforced to the fullest extent allowed by law."

15. The Sales Agreement further provides that "in the event there is a change in such laws, whether by statute, regulation, agency or judicial decision, that has any material effect on any term of this Agreement, or in the event that counsel to one party determines that any term of this Agreement poses a risk of violating such laws, then the applicable term(s) of this Agreement shall be subject to renegotiation and either party hereto may request renegotiation of the affected term or terms of this Agreement, upon written notice to the other party, to remedy such condition. In the interim, both Company and Contractor shall perform their obligations in full compliance with applicable law."

16. On December 22, 2014, Ropes & Gray, LLP, acting as counsel for HDL informed counsel for BlueWave, by letter, of HDL's position that counsel to HDL "has determined that provisions of the Agreement, including but not limited to the current compensation arrangement set forth in Section 4(a)

('Compensation:Fees'), pose 'a risk of violating' federal and state laws and are therefore 'subject to renegotiation' as provided for in Section 18." [Exhibit C]. In that letter, Ropes & Gray, LLP, as counsel for HDL, acknowledged that both sides were to continue to perform their obligations under the contract.

17. HDL did not attempt to renegotiate the contract. Instead, its counsel, Ropes & Gray, LLP, by an email of January 5, 2015, sent on behalf of HDL a proposed "HDL-Bluewave Mutual Termination Term Sheet Draft of January 5, 2015." The purpose behind sending that proposal was to allow HDL to terminate the Sales Agreement, convert the sales force assembled by BlueWave to HDL employees under the direction and control of HDL and allow HDL to keep BlueWave's due and future payments for HDL's own use. [Exh. D]. HDL gave BlueWave a deadline of less than twelve hours to respond to that email and termination proposal. HDL made no legitimate attempt to renegotiate the terms of the Contract that it claimed posed a risk of violating laws.

18. During this time, HDL informed BlueWave that it was withholding payments due to BlueWave as part of a "negotiation tactic." HDL further informed BlueWave that part of the reluctance in paying BlueWave was because Johnson and Dent were making more money than Joe McConnell, the President of HDL.

19. HDL purportedly terminated the Sales Agreement by letter of January 9, 2015, to BlueWave. This was done less than four full days after HDL, through counsel, submitted the "HDL-Bluewave Mutual Termination Term Sheet Draft of January 5, 2015." That termination notice is attached as Exhibit E.

## COUNT ONE
## BREACH OF CONTRACT

20. Pursuant to the Contract, and as represented by HDL to BlueWave, BlueWave earned commissions from HDL, for BlueWave's sales activities, that were due and payable by December 15, 2014 in the amount of, to-wit: $3,103,512.35. HDL has failed and refused, after demand, to make the contractually called for payment.

21. Pursuant to the Contract, and as represented by HDL to BlueWave, BlueWave earned commissions from HDL, for BlueWave's sales activities, that were due and payable by January 15, 2015 in the amount of, to-wit: $2,703,126.42. However, HDL has failed to pay BlueWave in accordance with the Contract.

22. Pursuant to the Contract, it is believed and upon such belief averred that HDL owes BlueWave an additional amount of commissions for sales activities made in its territory, in excess of $19,000,000.00, for BlueWave's sales activities, that are due and payable. However, HDL has failed to account therefore and

informed BlueWave that it has no intention of making such payment as and when called for.

23. HDL has breached the Contract in connection with the payments that are past due and has anticipatorily breached the Contract with BlueWave in connection with additional payments that will be due to BlueWave.

24. In addition to the required but unpaid payments outlined above, HDL's breach has resulted in BlueWave's loss of approximately $3,000,000.00 in monthly compensation for the remaining months of its contract with HDL, for a total additional future loss of $180,000,000.00.

25. HDL breached the Contract by failing and refusing to renegotiate the affected terms of the Contract.  HDL's only attempts at renegotiation were to offer terms upon which the Sales Agreement, separate and apart from the Shareholder's Agreement, could be terminated.  HDL further failed to perform its obligations in full during the renegotiation period.

26. HDL has wilfully, intentionally and wrongfully breached the Contract by virtue of the above acts and practices, and by the submission of a "Sales Agreement Termination" dated January 9, 2015, in clear and direct violation of the Termination provisions contained in paragraph 7(b) of the Agreement.

27. Despite its purported termination of the Sales Agreement, HDL filed suit against Johnson and Dent claiming that they had violated the Shareholders Agreement. That suit is attached as Exhibit F. In that Complaint, HDL falsely claimed that "Johnson and Dent . . . refused to engage in good faith on renegotiating the potentially non-compliant provisions of the Sales Agreement." It was filed by the firms of LeClairRyan and Ropes & Gray, LLP on behalf of HDL. In that case, the United States District Court for the Eastern district of Virginia entered an injunction [Exhibit G] enjoining Johnson and Dent from taking certain actions.

28. Having obtained judicial relief enforcing the Contract, HDL is judicially estopped from claiming that the Contract, or any portion thereof, is illegal or unenforceable.

**WHEREFORE, BlueWave demands judgment against HDL for all past due and future payments due to it under the Contract, interest, fees and costs for HDL's failure to renegotiate the Contract and HDL's failure to make payments due under the Contract.**

*COUNT TWO*
*OPEN ACCOUNT/ACCOUNT STATED*

29. BlueWave incorporates all of the above and foregoing averments and adds thereto the following:

30. HDL owes BlueWave monies due by open account and/or by account stated.

**WHEREFORE, BlueWave demands judgment against HDL for monies due to it plus interest, fees and costs.**

### COUNT THREE
### WORK AND LABOR DONE

31. BlueWave incorporates all of the above and foregoing averments and adds thereto the following:

32. HDL owes BlueWave for work and labor done for HDL by BlueWave, in part, within the State of Alabama and within the jurisdiction of this Court.

**WHEREFORE, BlueWave demands judgment against HDL for monies due to it plus interest, fees and costs.**

### COUNT FOUR
### MONEY HAD AND RECEIVED

33. BlueWave incorporates all of the above and foregoing averments and adds thereto the following:

34. HDL owes BlueWave at least $24,806,638.77 for that portion of HDL's receipts from or arising out of the sales activities of BlueWave, received by HDL but not paid to BlueWave.

**WHEREFORE, BlueWave demands judgment against HDL for monies due to it plus interest, fees and costs.**

### COUNT FIVE
### UNJUST ENRICHMENT / QUANTUM MERUIT

35. BlueWave incorporates all of the above and foregoing averments and adds thereto the following:

36. BlueWave provided valuable services for the benefit of HDL.

37. HDL accepted the services provided.

38. HDL's retention of the compensation to which BlueWave is entitled, is unjust and inequitable.

39. BlueWave expected to be fully compensated for the work done by it as requested by HDL, at the time the services were rendered.

40. This cause of action is filed pursuant to Ga.Code Ann. Section 9-2-7.[1]

41. HDL owes BlueWave in quantum meruit representing the value of BlueWave's services to HDL.

**WHEREFORE, BlueWave demands judgment against HDL for monies due to it plus interest, fees and costs.**

---

[1] As stated in Exhibit "A", paragraph 17, the laws of the State of Georgia are to apply to the claims asserted in this Complaint.

## COUNT SIX
## ACCEPTANCE OF SERVICES

42. BlueWave incorporates all of the above and foregoing averments and adds thereto the following:

43. HDL has materially benefitted from the services provided by BlueWave.

44. HDL is not permitted to accept the valuable services of BlueWave and avoid payment for such services.

**WHEREFORE, BlueWave demands judgment against HDL for monies due to it plus interest, fees and costs.**

## COUNT SEVEN
## ACCOUNTING

45. BlueWave incorporates all of the above foregoing averments and adds thereto the following:

46. Under the Agreement, HDL is responsible for ascertaining and reporting to BlueWave, the amount of revenue collected by it from sales in BlueWave's territory, and make accurate calculations of the amount of commissions to which BlueWave is entitled.

47. The records of HDL's collections are solely within the possession of HDL.

48. To date, HDL has failed to accurately report the revenue it has collected by it from sales in BlueWave's territory.

49. Because of the number and complexity of records related to the revenue collected by HDL for sales made in BlueWave's territory, and because BlueWave has been provided no access thereto, a full, accurate and complete accounting of the revenues collected by HDL for all revenue HDL has collected or received for sales made in BlueWave's territory, an accounting is required.

50. The accounting is overly complex and there is no adequate remedy at law to obtain the information required to fully and accurately ascertain the total revenue received by HDL for sales made by BlueWave in its territory.

**WHEREFORE, BlueWave demands a full, accurate and complete accounting of all revenue received or collected by HDL for sales made in BlueWave's territory, during the term of the Agreement at issue, and for such other, further or different relief to which it may be entitled including any appropriate reasonable fees and costs in the premises.**

Respectfully submitted,

/s/ John Martin Galese
John Martin Galese, ASB-5382-e61j
John@galese-ingram.com

/s/ Jeffrey L. Ingram
Jeffrey L. Ingram, ASB-9270-m74j
Jeff@galese-ingram.com

/s/ David Butler
David Butler, ASB-0350-n92b
David@galese-ingram.com

Of Counsel:

Galese & Ingram, P.C.
800 Shades Creek Parkway
Suite 300
Birmingham, Alabama 35209
(205) 870-0663
(205) 870-0681 - facsimile

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading upon all counsel of record in this cause on June 3, 2015.

/s Jeffrey L. Ingram